UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL JOHNSON,

Plaintiff,

-v-

STARBUCKS CORPORATION D/B/A STARBUCKS
COFFEE COMPANY,

Defendant.

---

22 Civ. 2409 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Plaintiff Michael Johnson ("Johnson") brings this negligence action against Starbucks

Corporation d/b/a Starbucks Coffee Company ("Starbucks") for injuries arising out of an

incident in a Starbucks store ("the incident"), in which another patron violently confronted

Johnson.  Johnson argues that the confrontation was foreseeable, and that Starbucks negligently

failed to implement reasonable security measures to prevent it.  Starbucks disagrees and moves

for summary judgment, contending that the evidence adduced in discovery cannot establish that

such an incident was foreseeable.  For the foregoing reasons, the Court denies the motion.

# I.    Background

## A.    Factual Background[1]

### 1.    The June 28, 2019 Incident

On June 28, 2019, Johnson was assaulted in a Starbucks at 10 Union Square East, New

York, New York 10003 (the "Union Square Starbucks" or the "Union Square store") by another

---

[1] The Court draws the following facts from the parties' submissions in support of and in opposition to defendants' summary judgment motion.  These include the following: (1) the parties' amended joint stipulation of undisputed facts ("JSF"), Dkt. 57; (2) in support of Starbucks's motion for summary judgment: its memorandum of law, Dkt. 61 ("Mem."), exhibits and declarations in support, Dkt. 60, Exs. A–K, including the depositions of Michael Johnson, Dkt. 60, Ex. E ("Johnson Dep."), Emely Rodriguez, *id.*, Ex. F ("Emely Dep."), William Matthew Bussard, *id.*, Ex. G ("Bussard Dep."), Isis Flores, *id.*, Ex. H ("Flores Dep."), Anubis Rodriguez, *id.*, Ex. I ("Anubis Dep."), and Cihangir Kirimca, *id.*, Ex. J ("Kirimca Dep."); Starbucks's Local Rule 56.1 statement, Dkt. 62 ("Def. 56.1"), and its reply to Johnson's Local Rule 56.1 statement, Dkt. 69 ("Def. Reply 56.1"), and its reply to Johnson's opposition to summary judgment, Dkt. 68 ("Reply"); and (3) in opposition to the motion: Johnson's memorandum of law, Dkt. 68 ("Opp."); Local Rule 56.1 counterstatement, Dkt. 65-2 ("Pl. 56.1"), and reply to Starbucks's Local Rule 56.1 statement, Dkt. 65-1 ("Pl. Reply 56.1").

Citations to a party's Rule 56.1 statement incorporate by reference the materials cited therein. Where facts stated in a party's Rule 56.1 statement are supported by testimonial or documentary evidence, and denied by a conclusory statement by the other party without citation to conflicting testimonial or documentary evidence, the Court finds such facts true.  *See* S.D.N.Y. Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

Johnson does not dispute or otherwise address the assertions contained in paragraphs 1, 4–14, 17–21, 26–29, 36–40, 42, 44–45, 47–54, 59–60, 62 of Starbucks's Rule 56.1 statement. Starbucks does not dispute the assertions in paragraphs 84, 89, 99, 101, 109 of Johnson's counterstatement.  "[W]hile a court 'is not required to consider what the parties fail to point out' in their Local Rule 56.1 statements, it may in its discretion opt to 'conduct an assiduous review of the record' even where one of the parties has failed to file such a statement." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (quoting *Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 292 (2d Cir. 2000)).  Here, the Court has reviewed the parties' respective Rule 56.1 Statements and found a factual basis in admissible evidence for the assertions in the paragraphs listed above.

person in the store ("the assailant").[2]  JSF ¶ 1.  Johnson had previously visited the Union Square Starbucks between 15 and 20 times.  *Id.* ¶ 2; Johnson Dep. at 21.

The Union Square Starbucks has front and back entrances.  Johnson Dep. at 24.  On the day of the incident, Johnson entered the Union Square Starbucks at 8:15 a.m., JSF ¶ 3, through the front entrance, on 14th Street, Johnson Dep. at 24–25.  He purchased a tea, JSF ¶ 5, proceeded to the right and around the corner from the purchasing counter, Johnson Dep. at 26, and sat down in a public seating area next to another customer to drink it, JSF ¶ 5.

The Union Square Starbucks had one unisex restroom available for public use.  *Id.* ¶ 8.  Johnson sat approximately two feet from the restroom to drink his tea.  Johnson Dep. at 28; JSF ¶ 9.  Johnson attested that he sat facing away from the restroom door, such that anyone seeking to access the restroom from the Union Square store's front entrance would have to walk by him.  Johnson Dep. at 28–29.  *But see id.* at 60 (assailant would not have had to walk by Johnson to reach restroom if entering from 14th Street entrance).  While drinking his tea, Johnson looked at his phone.  *Id.* at 29.

Johnson spent approximately 20 minutes in the Union Square Starbucks before the incident.  JSF ¶ 4.  At some point during this period, Anubis Rodriguez ("Anubis")[3]—then a shift supervisor at the Union Square Starbucks, *id.* ¶¶ 33–34—spoke to the man who would, later, attack Johnson and that man's acquaintance.  *Id.* ¶ 30.  Anubis asked the assailant to leave the Union Square store because she believed he was "loud," looked "a bit disheveled," and had a "disruptive type of energy."  *Id.* ¶ 35.  The assailant did not leave.  *Id.* ¶ 36.  *But see* Johnson

---

[2] The assailant's name is unknown to the parties and the Court.

[3] For ease of reference, the Court respectfully refers to Anubis Rodriguez and Emely Rodriguez by their first names.

Dep. at 59–60 (assailant appeared to leave).  Anubis then called the New York City Police Department.  JSF ¶ 37.  The parties agree that, before calling the police, Anubis had not seen the assailant interact with, threaten, or physically assault anyone, or display body language suggestive of physical violence.  *Id.* ¶¶ 38–41.  Johnson observed this conversation from a distance.  *Id.* ¶ 30.   He could not hear any of its content.  *Id.* ¶ 31; Johnson Dep. at 56.  He did not notice either participant raising his or her voice.  JSF ¶ 32; Johnson Dep. at 57–58.

At some point thereafter, Johnson finished his tea and went to use the restroom.  JSF ¶ 7. He walked down a ramp to the restroom door, which was closed.  *Id.* ¶¶ 10–11.  There was no line.  *Id.* ¶ 11.  Johnson could not see "from his vantage point" whether there was an indicator on the door stating whether the restroom was in use, so he knocked.  *Id.* ¶ 12.  Johnson did not hear any response from within the restroom.  *Id.* ¶ 13.

After Johnson knocked, the assailant—whom he had not noticed until that moment, and who was crouching next to the restroom door, Johnson Dep. at 35–36—began yelling expletives at Johnson.  JSF ¶¶ 13–14.  Johnson attested that the assailant invited him to perform a sexual act, Johnson Dep. at 34–35, and that he declined, *id.* at 35, and backed away, JSF ¶ 16.  The assailant began punching and kicking Johnson.  *Id.* ¶ 17.  The assailant punched Johnson in his face, head, and eyes between six and seven times, with closed fists, *id.* ¶ 18, and kicked Johnson in his leg between six and seven times, *id.* ¶ 19.  Johnson remained standing, and attempted to "hold[] off" his assailant.  Johnson Dep. at 38–39.  The assailant jumped on Johnson's glasses, breaking them.  JSF ¶ 20.  Johnson estimates the confrontation lasted four to five minutes. Johnson Dep. at 49.  *But see* Kirimca Dep. at 63 (estimating confrontation lasted 10 or 15 seconds).  When the confrontation stopped, "a person who appeared to be an acquaintance" of the assailant emerged from the restroom.  JSF ¶ 25.

4

The assailant changed into a clean shirt; in Johnson's account, "there was . . . blood everywhere."  Johnson Dep. at 41.  As the assailant was changing his shirt, a Starbucks employee approached.  Johnson Dep. at 42–43.  The employee offered to call Johnson an ambulance, which Johnson accepted.  *Id.* at 46–47.  Johnson did not know the identity of the employee.  *Id.* at 42–43.  While Johnson waited for the ambulance, the assailant exited the store with his apparent acquaintance, JSF ¶ 26, through the back entrance, which was approximately four feet from the restroom, Johnson Dep. at 48.  The police arrived shortly thereafter.  *Id.* at 50; JSF ¶ 43 (police did not arrive until after incident).  The assailant and acquaintance were, by then, gone. Johnson Dep. at 61.  Johnson testified that, after the attack, he spoke to an unidentified female employee who told him "that [his assailant and the assailant's acquaintance] had been asked to leave before and came back."  *Id.* at 55.

At least one identified employee of the Union Square Starbucks—Cihangir Kirimca, the store manager between 2013 and August 2019—witnessed some portion of the incident.  JSF ¶ 27; *cf.* Pl. Reply 56.1 ¶ 30 (disputing whether Kirimca saw "most" or "some" of the incident). Kirimca characterized Johnson's knocking on the restroom door as "banging," walked over "to see if everything was okay," JSF ¶ 28, and observed the assailant punching Johnson in the face, *id.* ¶ 29.  Kirimca completed an incident report, Pl. Reply 56.1 ¶ 55, which describes Johnson's conduct as "g[etting] impatient and bang[ing] on the door," Dkt. 60, Ex. K.  *But see* Pl. Reply 56.1 ¶ 56 (disputing this characterization). [4]

---

[4] Johnson testified that he asked the same unidentified female employee who had told him about the assailant's previously being asked to leave to fill out an incident report, and that she told him that "they d[idn't] do incident reports," and that "[he] would have to use [a] police report." Johnson Dep. at 54.

It is undisputed that Johnson did not provoke the confrontation, does not know why he was attacked, and, before the assault began, did not have time to call for help.  JSF ¶¶ 21–24. Johnson had not previously complained to Starbucks about any customer and does not know anyone who had.  *Id.* ¶¶ 45–46.  Before the incident, Johnson had never witnessed a physical altercation in the Union Square Starbucks and was not aware of any.  *Id.* ¶¶ 47–48.  As a result of the incident, Johnson suffered lacerations on his head and face, and psychological injuries.  Dkt. 60, Ex. D at 6–7 (responses to interrogatories).

### 2.    Starbucks's 2018 Policy Change

In 2018, the year before the assault on Johnson, Starbucks changed its policy regarding use of its restrooms.  *See, e.g.*, Opp. at 11–12.  Before the change, Starbucks's restrooms were only available to paying customers.  Bussard Dep. at 53–54.  But sometime in 2018, Starbucks began to permit both paying and non-paying customers to use its restrooms, as long as a customer had not previously been restricted from entering the store through its internal process or law enforcement.  *See* Emely Dep. at 36–37; Bussard Dep. at 37–38, 54.  Johnson terms the policy adopted in 2018 the "open-door policy."  *See, e.g.*, Pl. 56.1 ¶ 94.

Under the earlier policy, employees could ask patrons to leave a Starbucks if they had not purchased anything.  Kirimca Dep. at 72.  After the policy change—that is, under the open-door policy—employees were not permitted to do so, *id.*, and a person's conduct had to be "particularly egregious . . . such as an assault with injury or extreme property damage" for him or her to be barred from a store, Bussard Dep. at 38.  *See* Emely Dep. at 52 ("[W]e can[]not . . . make assumptions as to the physical [] wellbeing of any customer, unless they're demonstrating actual acts that disrupt [the store].").  As Kirimca testified: "We couldn't call the cops after [the policy change]" without the district manager's permission and "unless [it was] for [] a physical violence situation."  Kirimca Dep. at 73; *see* Bussard Dep. at 38–39.  Kirimca testified that,

given the store's location in Union Square, with its "heavy homeless population, homeless people showered in the bathroom." *Id.* at 73–74; Anubis Dep. at 42 (people would "occasionally" bathe in store bathrooms). The "only thing [employees] could do" with "homeless people . . . [is] wake them up" if they were sleeping. Kirimca Dep. at 73.

Johnson also submitted an exhibit of a video of remarks by Starbucks's CEO, Howard Schultz. *See* Dkt. 65, Ex. A ("Schultz Video").[5] There, Schultz discusses "what's going on in the country and how America has become unsafe," *id.* at 00:02, and that Starbucks had decided to close stores that "are not unprofitable" because of safety concerns, *id.* at 00:11–35. *See, e.g.*, *id.* at 00:35 ("[O]ne of the primary concerns that our retail partners have is their own safety."). As examples of safety concerns, Schultz notes instances "in our bathrooms" involving "mental illness," "homelessness," and "crime." *Id.* at 00:43–55. Starbucks, Schultz continues, faces "things that [its] stores were not built for." *Id.* at 00:56–1:03.

### 3. Past Incidents at the Union Square Starbucks

The Union Square Starbucks is located beneath a hospital with a methadone outpatient treatment clinic. Kirimca Dep. at 22; *see* Def. Reply 56.1 ¶ 87. Kirimca testified that he had personally observed how "people would go receive their drugs [at the clinic], come into the store, trade with each other," Kirimca Dep. at 22, and, at times, "f[ight] amongst each other for their drugs," *id.* at 65; *see id.* at 68–69. Kirimca also stated he had observed other, unspecified instances of "fights," but did not clarify the circumstances or frequency of those altercations. *Id.*

---

[5] Johnson's opposition does not identify when, where, or under what circumstances the video was filmed. The Court infers it is the same video shown to Starbucks's Rule 30(b)(6) witness, Willard Matthew Bussard, at his deposition. *See* Bussard Dep. at 119–24. There, Johnson's counsel represented that the video had been posted publicly on Youtube.com, on January 29, 2019, and was titled, "These Lessons Took Howard Schultz from Starbucks CEO to the Presidential Race." *Id.* at 120–21.

at 39; *see also id.* at 44.  He testified that the physical fights mostly arose from "drug addicts or alcoholics that [had] verbal confrontations amongst themselves that ultimately turned physical," and, by way of explanation, that "[Starbucks] would get some of the early bar crowd" because "the store was open until midnight."  *Id.* at 69.  Kirimca also testified that, as store manager, he would have been made aware of any physical altercations in the store.  *Id.* at 71.  Iris Flores, a barista in the store, similarly testified that she observed multiple physical fights between people inside the Union Square Starbucks.  Flores Dep. at 15, 70–71; *see id.* at 71 (police were called, but did not arrive until two or three hours after incident).  Flores also saw people who appeared homeless or under the influence of drugs and/or alcohol come in to use the store's bathroom.  *Id.* at 36–37.  Anubis Rodriguez, a shift manager at the store, JSF ¶ 34, made similar observations.  Anubis Dep. at 39 (saw people come into Union Square store who appeared intoxicated, on drugs, and/or homeless).

Apart from physical fights, Kirimca testified, he had received "hundreds" of verbal threats while in the store, Kirimca Dep. at 51, including verbal threats of violence, *id.* at 76.  *See also id.* at 64–67, 75–76, 34–35.  *But see* Anubis Dep. at 50 ("surprised" to hear Kirimca testified he was threatened at least 100 times).  Kirimca testified that he "personally [had] never been physically assaulted," but that his coworker had "coffee thrown on them."  Kirimca Dep. at 65.  Kirimca also testified that, that a customer had attempted to spit on him, and, on a different occasion, a customer had attempted to punch him.  *Id*. at 67.  Kirimca testified that he frequently intervened in situations that seemed likely to escalate into physical confrontations because "[he is] more of an imposing character" and did not want to "put [his] [coworkers] in a place [that would] threaten their safety when [he] could just speak to someone."  *Id*. at 66.

Starbucks produced in discovery an incident log, Dkt. 49 ("incident log"), that compiles the incident reports filed in the 11 Starbucks stores most proximate to the Union Square store.[6] The incident log was created after a search of Starbucks's internal incident reports using search terms tending to capture physical assaults, Dkt. 50, recorded during the period of June 28, 2016 through June 28, 2019. *Id.* (sealed).  Of its 19 entries, the incident involving Johnson is the only physical confrontation reported; the other incidents involve thefts, slip-and-falls, and water leaks. *Id.* (sealed); *see* Dkt. 60, Ex. K (June 28, 2019 incident report).  Employees, however, attested that not all incidents were documented in incident reports.  The process for reporting incidents digitally—versus manually, Bussard Dep. at 113—was only put in place after Starbucks implemented the open-door policy in 2018, *id.* at 99–100.  And Willard Matthew Bussard ("Bussard")—Starbucks's Rule 30(b)(6) witness, who was responsible for "security pertaining to customer initiated disruption in [Starbucks's] retail stores," Bussard Dep. at 10—testified that he could not confirm "[t]he degree to which [employees] complete[d] [the] reports," *id.* at 100, and that local store "leaders kind of define the performance they require around that," *id.*  Kirimca testified that, at the Union Square store, Starbucks employees completed incident reports only if the police were called and the parties involved in an incident were still present when the police arrived.  Kirimca Dep. at 44; Def. 56.1 Reply ¶ 109 (not disputing).  *But see* Anubis Dep. at 51–57 (stating she called police and made incident report for shoplifting).  Bussard testified that, in general, if an assault occurred, but was not particularly serious, Bussard Dep. at 147, or if first responders were not required, *id.* at 146, the incident might not be documented in an internal incident report.

---

[6] With the Court's authorization, this log has been filed under seal.  Dkt. 51.

###### 4.    Security at the Union Square Starbucks

When Kirimca first began working at the Union Square Starbucks in 2013, *see* Def.

Reply 56.1 ¶ 77, it had a security guard "on and off," Kirimca Dep. at 23, who worked "at night

and mostly on weekends," *id.* at 24.  *See id.* at 23 (guards "weren't allowed to do anything"

beyond asking disruptive persons to "leave or call[ing] the cops").  Flores testified, however, that

from the time when she began working at the Union Square Starbucks in 2018, *see* Flores Dep.

at 8, she never observed any security in the store, *id.* at 57–58; *see also* Kirimca Dep. at 23 (later

in time working at Union Square Starbucks, "[employees] were told there wasn't enough money

to pay for security").

Kirimca testified that the Union Square employees repeatedly requested security—

particularly, in response to verbal assaults—but that management declined to provide security.

*Id.* at 23, 25, 74–75.  Flores similarly testified that she "often" discussed the need for greater

security with other store employees, Flores Dep. at 74, and that "[they] were often told [they]

would get security," but that "it just [did]n't come," *id.* at 75.  Instead, when Union Square

Starbucks employees observed physical altercations, they typically called the police—but,

because "the response time was horrendous, . . . it didn't really help much."  Kirimca Dep. at 44;

*see* Flores Dep. at 71 (police arrive "usually . . . two, three hours after the incident"); Anubis

Dep. at 52–53 (police did not always respond).

Flores testified that she "often" discussed feeling unsafe and the need for additional

security measures with other Union Square Starbucks employees.  Flores Dep. at 81–82.

Kirimca similarly testified that the store's lack of security made him "concern[ed]" for the safety

of his team.  Kirimca Dep. at 51–52.   Anubis, however, testified that she "never felt like [she]

was in danger and [she] worked [until] 4:30 in the morning."  Anubis Dep. at 50.  And Bussard

testified that he did not discuss security measures at the Union Square store with employees

before June 2019.[7]  Bussard Dep. at 88.  He acknowledged that "[t]he context of the surrounding

area does make a difference when it comes to considering security countermeasures," *id.* at 89,

but stated that Starbucks relied on local district and regional managers to report problems with

unwanted behavior, *id.* at 89–90.  He also testified that he was opposed to security guards,

viewing them as "ineffective," as "[p]eople that are driven to engage in criminal activity will do

so."  *Id.* at 84.

### B.   Procedural History

On May 6, 2022, Johnson filed this case in New York State Supreme Court in the Bronx.

Dkts. 1-1 ("Compl."), 60-2.  On March 24, 2022, Starbucks removed the case to this Court, on

the basis of diversity jurisdiction.  *See* Dkt. 1 ¶ 6 (citing 28 U.S.C. § 1332).  It represented that

Johnson is a citizen of New York, Starbucks is a citizen of the State of Washington, and the

amount in controversy exceeds $75,000.  *See id.* ¶¶ 6, 8–11, 14; *see also* Compl. ¶¶ 1, 3, 27.

On March 31, 2022, the Court scheduled an initial pretrial conference.  Dkt. 4. On April

20, 2023, the parties filed a joint status letter, in which Johnson indicated he intended to move to

remand the case to state court based on his settlement demand of $75,000.  Dkt. 10.[8]   On April

---

[7] Bussard did, however, testify that, after June 2019, he had conversations with employees about "security" concerns that were "on [employees'] minds," Bussard Dep. at 83, 86, and "things that could be done to mitigate those feelings," *id.* at 86.  He testified that he and Emely Rodriguez discussed "improv[ing] the lighting . . . so [employees] can see a little bit better," "chang[ing] the lock" on the restroom frequently, and adding a lock to a "back of the house space" where supplies were housed so employees could "have a shelter in place space."  *Id.* at 83, 87.  He did not "d[id not] recall" conversations regarding security personnel at the Union Square store.  *Id.* at 83.

[8] On April 14, 2022, Starbucks had filed a letter stating the basis for diversity jurisdiction.  Dkt. 5.  On April 17, 2022, Johnson opposed the removal on the basis that he had made a settlement demand of $75,000, which Starbucks had rejected.  Dkt. 8.  The Court responded by denying Johnson's request to adjourn the initial conference and noting that "a mere settlement demand does not eliminate the existence of diversity jurisdiction."  Dkt. 9.

21, 2022, the Court held the initial conference, at which it confirmed that Johnson's $75,000 settlement demand did not undermine diversity jurisdiction.  Johnson did not ultimately move to remand.  The same day, the Court approved the parties' case management plan.  Dkt. 12.

On August 23, 2022, the Court extended fact discovery for the limited purpose of conducting a deposition of Starbucks's Federal Rule of Civil Procedure 30(b)(6) witness who had been out of the country.  Dkt. 27.  On October 21, 2022, Starbucks notified the Court that it intended to move for summary judgment.  Dkt. 37.  On October 28, 2022, Johnson responded that he intended to oppose Starbucks's motion.  Dkts. 38–39.

On November 4, 2022, after fact discovery had closed and on the eve of the scheduled pre-motion conference, Johnson raised new discovery disputes, primarily focused on Starbucks's failure to produce incident reports of criminal activity at the Union Square Starbucks, as well as reports for between eight and 10 immediately surrounding Starbucks locations (the "District").  Dkts. 41–42.  On November 7, 2022, the Court ordered Starbucks to produce and file, *inter alia*, a log of all incidents reported between June 28, 2016 and June 28, 2019 at Starbucks stores in the District.  Dkts. 43, 45.  On November 18, 2022, Starbucks filed, under seal, the incident log, Dkt. 49 ("Incident Log"), discussed above, which reflects 19 claims and incidents from the period of June 28, 2016 through June 28, 2019, including the assault on Johnson.  Starbucks also filed an explanatory letter under seal.  Dkt. 50.  Johnson did not object to the log as constructed, but stated that, in opposition to Starbucks's anticipated motion for summary judgment, he anticipated asking the Court to take judicial notice of general criminal activity statistics for the area around

the Union Square Starbucks.[9]  Dkt. 52.  Starbucks reserved its right to object to such evidence.

Dkt. 53.

On December 21, 2022, the Court held a pre-motion conference and set a briefing

schedule for Starbucks's summary judgment motion.  Dkt. 55.  On January 27, 2023, the parties

filed their joint statement of stipulated facts.  Dkt. 56, 57 (as amended), 58.  On February 17,

2023, Starbucks moved for summary judgment, Dkt. 60, and filed a memorandum of law, Dkt.

61 ("Mem."), exhibits, Dkt. 60, Exs. A–K, and Local Rule 56.1 statement, Dkt. 62 ("Def. 56.1"),

in support.  On March 10, 2023, Johnson opposed the motion, filing a memorandum of law,

Dkts. 64, 65 ("Opp."), Local Rule 56.1 counterstatement, Dkt. 65-2 ("Pl. 56.1"), and response to

Starbucks's Rule 56.1 statement, Dkt. 65-1 ("Pl. Reply 56.1"), in support.  On March 13, 2023,

Johnson requested leave to file a video exhibit in support of his opposition.  Dkt. 66.  The next

day, the Court granted Johnson's request, Dkt. 64, and directed Johnson to email the video to

chambers.  On March 24, 2023, Starbucks replied, Dkt. 68 ("Reply"), and filed a response to

Johnson's Rule 56.1 counterstatement, Dkt. 69 ("Def. Reply 56.1"), in support.

## II.   Legal Principles Governing Motions for Summary Judgment

To prevail on a motion for summary judgment, the movant must "show[] that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[9] Johnson ultimately did not submit such statistics in support of his opposition.  As Johnson
acknowledges, evidence of ambient neighborhood crime alone, without more, would not be
sufficient to establish foreseeability of a dangerous incident in the store.  *See* Opp. at 6; *see, e.g.*,
*Johnson v. City of New York*, 7 A.D.3d 577, 578 (2d Dep't 2004) (no triable issue of fact as to
foreseeability where plaintiff presented crime statistics for preceding years for the New York
City Police Department precinct in which building was located, but "failed to present admissible
evidence of any reported crimes that occurred in the building" or in its vicinity that were similar;
"ambient neighborhood crime alone" insufficient); *Novikova v. Greenbriar Owners Corp.*, 258
A.D.2d 149, 153 (2d Dep't 1999) (New York "courts have repeatedly held that ambient
neighborhood crime alone is insufficient to establish foreseeability.") (collecting cases).

law." Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating the absence of a

question of material fact.  In making this determination, the Court must view all facts "in the

light most favorable" to the non-moving party.  *Holcomb v. Iona Coll.*, 521 F.3d 130, 132

(2d Cir. 2008); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

     If the movant meets its burden, "the nonmoving party must come forward with

admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary

judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).  "[A] party may

not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion

for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation

marks and citation omitted).  Rather, the opposing party must establish a genuine issue of fact by

"citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also*

*Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

     "Only disputes over facts that might affect the outcome of the suit under the governing

law" will preclude a grant of summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).  In determining whether there are genuine issues of material fact, the Court is

"required to resolve all ambiguities and draw all permissible factual inferences in favor of the

party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236

(2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

## III.   Discussion

     Starbucks's summary judgment motion turns on one element of Johnson's negligence

claim against it as a proprietor of a public establishment with a duty to protect patrons against

foreseeable harms to safety: whether the attack on Johnson was foreseeable.  Johnson argues that

the assault was foreseeable, such that Starbucks had a duty to protect him.  He notes Starbucks's

"knowledge of prior criminal activity" in the Union Square store, the concerns employees had

expressed about the need for security, the lack of protective security at the store, and the store's deliberate open-door policy.  Opp. at 9–12.  Starbucks counters that the evidence does not support such a duty.  It emphasizes that there was no history of *similar* criminal activity at the store.  "[T]he mere presence of homeless or intoxicated individuals on the premises," it argues, did "not make a spontaneous unprovoked attack foreseeable"; it notes that "there is no evidence that [Johnson's] attacker was homeless or intoxicated."  Reply at 4.

For the reasons that follow, the Court's assessment is that a reasonable jury, viewing the assembled evidence, could find for either side on the disputed element.  On Starbucks's motion, the disputed facts must be viewed in the light most favorable to non-movant Johnson.  Such requires denial of Starbucks's motion.

## A.    Applicable Legal Standards

Under New York law,[10] "[t]o establish a prima facie case of negligence . . . a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (internal quotation marks omitted).  "A possessor of a public establishment has no duty to protect against unforeseeable and unexpected assaults."  *Wall v. Starbucks Corp.*, 211 A.D.3d 767, 769 (2d Dep't 2022), *leave to appeal denied*, 39 N.Y.3d 912 (2023).  It does, however, have a "duty to control the conduct of third persons on their premises when [it] ha[s] the opportunity to control such persons and [is] reasonably aware of the need for such control."  *Pink v. Rome Youth Hockey Ass'n, Inc.*, 28 N.Y.3d 994, 997–98 (2016).  "That duty includes minimizing foreseeable dangers on the[] property," "including foreseeable criminal conduct."

---

[10] In their submissions, both parties apply New York law, Mem. at 3; Opp. at 4, as clearly applies.  *See Holliday as Tr. of LB Litig. Tr. v. Brown Rudnick LLP*, No. 19 Civ. 10925 (PAE), 2020 WL 4340786, at *8 (S.D.N.Y. July 28, 2020) (same); *Wolfson v. Bruno*, 844 F. Supp. 3d 348, 354 (S.D.N.Y. 2011).

*Id.* at 998 (internal citations, quotation marks, and alterations omitted); *see Maheshwari v. City of New York*, 2 N.Y.3d 288, 294 (2004) (same).

"Foreseeability merely determines the scope of the duty," and "is defined by past experience and the likelihood of conduct on the part of third persons which is likely to endanger the safety of the visitor." *Maheshwari*, 2 N.Y.3d at 294 (internal quotation marks, ellipses, and citations omitted). To raise a genuine issue of material fact as to whether a third party's criminal act was reasonably foreseeable, a plaintiff may present "[e]vidence of prior criminal acts sufficiently similar to the instant act." *Gray v. Denny's Corp.*, 535 F. App'x 14, 15 (2d Cir. 2013); *Cort v. Marshalls Dep't Store*, No. 14 Civ. 7385 (NGG) (RER), 2017 WL 6513673, at *3 (E.D.N.Y. Dec. 19, 2017) ("To establish that a criminal act was reasonably foreseeable, a plaintiff must proffer evidence of the same or similar criminal activity at a location sufficiently proximate to the subject location." (internal quotation marks omitted)). "The plaintiff need not, however, show that exactly the same crime had taken place previously, or that a similar crime had taken place in exactly the same location as the act on which the plaintiff's suit is based." *Cort*, 2017 WL 6513673, at *3.

**B.   Analysis**

Starbucks's motion asserts that the record evidence would not permit a reasonable jury to find the assault on Johnson was foreseeable. Johnson argues that the record evidence of prior incidents in the Union Square store—plus its location immediately below a methadone clinic, and the security concerns articulated by multiple employees—raise a triable issue of fact as to the foreseeability of the June 28, 2019 incident. Starbucks counters that the evidence before that date reflects only "wayward acts" that are too dissimilar from the attack on Johnson to make that attack foreseeable.

16

At the heart of the parties' dispute, thus, are the prior incidents at the Union Square store, and what these events reasonably suggest about the foreseeability of an assault on a patron at the store.  "Whether circumstances attending earlier incidents are sufficiently similar to the relevant conditions prevailing at the time plaintiff was injured is to be determined by the issues presented in each case."  *Gray*, 535 F. App'x at 16 (internal quotation marks omitted).  In making such an assessment, courts consider "the location, nature and extent of those previous criminal activities and their similarity, proximity or other relationship to the crime in question."  *Jacqueline S. by Ludovina S. v. City of New York*, 81 N.Y.2d 288, 295 (1993); *Hedges v. E. River Plaza, LLC*, 94 N.Y.S.3d 538 (N.Y. Sup. Ct. 2018) (same).

Here, Johnson has adduced evidence of multiple physical fights within the Union Square Starbucks instigated by visitors to that store.   *See* Flores Dep. at 71 (observed "more than one" physical fight); Kirimca Dep. at 39, 44, 65, 68–69.  As related above, these altercations were described by store-employee eyewitnesses as physical and violent in nature.  In light of these accounts, a reasonable juror could find the June 28, 2019 incident at the same store foreseeable. *See, e.g.*, *Zhang v. ABC Corp.*, 194 A.D.3d 990, 991–92 (2d Dep't 2021) (denying summary judgment on negligence claim where defendants failed to adduce affirmative testimony that "there had been no prior fights or assaults in the restaurant," and witness claimed only lack of memory); *Whittingham v. McDonald's Corp.*, 174 A.D.3d 672, 673 (2d Dep't 2019) (triable issue of fact as to whether incident where two women behind plaintiff began fighting in line at McDonalds, and plaintiff was injured after trying to intercede, was foreseeable, in light of "prior violent incidents" in restaurant); *Solomon v. Nat'l Amusements, Inc.*, 128 A.D.3d 947, 948 (2d Dep't 2015) (triable issue of fact where deposition testimony was that, in year preceding incident

at issue, there had been four or five other incidents "in which disputes between patrons escalated into physical altercations").

Starbucks notes that the descriptions by its employees Flores and Kirimca were vague as to the circumstances of previous fights they witnessed. The absence of a precise precursor—one in which a patron was beaten by another in the exact manner in which Johnson was attacked— does not, however, undermine the evidentiary force that a reasonable jury could attach to these incidents, particularly when viewed in combination. *See Cort*, 2017 WL 6513673, at *3 ("The plaintiff need not . . . show that exactly the same crime had taken place previously, or that a similar crime had taken place in exactly the same location as the act on which the plaintiff's suit is based."). Indeed, in the cases Starbucks cites as ostensibly showing that Flores and Kirimca's testimony was insufficiently specific as to the prior violent incidents in the store, New York courts found triable issues of foreseeability where the incidents were described as merely "disputes . . . [that] escalated into physical altercations," *Solomon*, 128 A.D.3d at 948, and "prior violent incidents," *Wittingham*, 174 A.D.3d at 673. That description applies here. As in *Solomon* and *Wittingham*, the plaintiff has adduced evidence of a pattern of fights, involving physical force, in the same location. *See Gray*, 535 F. App'x at 16 (denying summary judgment motion, and holding that defendant "overstates the level of similarity required to raise a triable question of foreseeability," as "[it] was not the case [that plaintiff] adduced no, or only one, instance of customer assault").

The record, in any event, contains other evidence on which a jury could find an assault foreseeable. In discovery, Johnson adduced evidence of three other incidents of customer-instigated violence towards Starbucks's employees: where customer(s) (1) attempted to punch an employee, Kirimca Dep. at 67; (2) attempted to spit on an employee, *id.*; and (3) threw coffee at

an employee, *id.* at 65.  Starbucks discounts these incidents as dissimilar to the one here, on the grounds that these attacks on employees bespoke the attackers' dissatisfaction with their purchasing experience.[11]  *See* Reply at 2.  Apart from the fact that the victims of these assaults were employees, however, Starbucks does not point to any evidence that the assaults were motivated by dissatisfaction with the Starbucks's experience (for example, its coffee, vittles, ambience, or pricing).  Nor does the record supply evidence isolating these attacks as motivated by customer "dissatisfaction" with Starbucks.[12]  On a motion for summary judgment, where the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Johnson*, 680 F.3d at 236, a jury could reasonably adopt Johnson's perspective on them as bespeaking a generalized risk of assaultive

---

[11] Starbucks protests that "it is unclear if the[se] incident[s] occurred before or after [Johnson's] incident."  Def Reply 56.1 ¶ 91.  These incidents, however, were elicited during the deposition of former store manager Kirimca during questioning by Starbucks's counsel.  Had there been good reason to infer that the incident post-dated the assault on Johnson, Starbucks's counsel had every opportunity to elicit that fact.

[12] Starbucks points to just one piece of evidence that a confrontation resulted from customer dissatisfaction, Mem. at 15—the following exchange with Flores during her deposition:

> Q:  Sometimes you would have customers that would become loud and abusive for different reasons, some of them silly; would that be a fair statement?
> A:  Yes.
> Q:  There's too much milk in my coffee; it's not strong enough; it's not hot enough; you gave him more.  All kinds of wacky reasons and that's something that you probably have heard many times working there three and a half years at that location, correct?
> A:  Yes.

Flores Dep. at 64.  This exchange has limited relevance here.  On its face, it explains no more than verbal disagreements between customers and Starbucks employees.  It does not account for any violent incidents within the store, including the three involving customers to which store manager Kirimca testified.  Kirimca testified that he had experienced "hundreds" of verbal altercations with customers.  Kirimca Dep. at 51.

behavior in the store.  A jury taking that view could find these incidents underscore the

foreseeability of unprovoked violence in the store of the type that could harm a customer.

Johnson has also adduced evidence of the heightened risks of patron violence presented

by the location of the Union Square store: immediately below a methadone outpatient clinic.  *See*

*Jacqueline S.*, 81 N.Y.2d at 295 (considering venue's location in evaluating foreseeability of

harm).  Kirimca, for example, testified to observing how "people would go receive their drugs [at

the clinic], come into the store, trade with each other," Kirimca Dep. at 22, and, at times, "f[ight]

amongst each other for their drugs," *id.* at 65; *see id.* at 68–69.  Starbucks counters that Johnson

has not adduced evidence that his assailant was under the influence of a substance or otherwise

associated with the clinic.[13]  It further argues that fights between "suspected drug users . . . over

drugs" are "very different from an unprovoked attack on an unsuspecting customer."  Reply at 2.

But to establish foreseeability of an assault on a patron, Johnson need not establish a predicate

act of violence sharing the precise mechanism of the one to which he fell victim.  In light of the

---

[13] Because the assailant was not apprehended, his motivation to attack Johnson—including
whether he was mentally ill or under the influence of drugs or alcohol—is lost to history.  The
record reflects only that the assailant was behaving in a manner sufficiently alarming to Anubis
that she asked him to leave the store before the incident, and called the police when he did not do
so.  JSF ¶¶ 35–37; Anubis Dep. at 30–31 (stating "[she] d[idn't] remember" assailant's exact
behavior, but—trying to "say this nicely"—that he was "disruptive" and "loud").  That Anubis
alerted to the assailant's troubling behavior supports Johnson on the element of causation:
Johnson may cite Anubis's attempts to eject the assailant as evidence that, had a security officer
been present, the attack on Johnson would have been prevented.   There was differing testimony
among store employees about the incidence of calls to the police.  Anubis testified that she had
occasion to "call[] the police frequently for disruptions," Anubis Dep. at 51; Kirimca testified
that calling the police was a response typically reserved for "a physical violence situation,"
Kirimca Dep. at 73; Bussard testified that, to be restricted from a store, a customer's conduct had
to be "particularly egregious . . . such as assault with injury or extreme property damage,"
Bussard Dep. at 38–39; and Emely testified that the store would not "make assumptions as to the
physical [] wellbeing of any customer, unless they're demonstrating actual acts that disrupt [the
store]," Emely Dep. at 52.  It will be for a jury, on closer questioning of these witnesses on these
points, to assess the extent to which employees' calls to the police bespoke a fear that physical
harm could befall customers absent official intervention.

evidence above, a reasonable juror could find that the Union Square Starbucks's close proximity to a clinic patronized by persons attempting to recover from drug addiction heightened the likelihood of physical altercations within the store, with concomitant risks of assault upon a patron.  The in-store physical altercations of which Johnson has adduced evidence—including, but not limited to, those instigated by persons leaving the methadone clinic—are not so "different in type and degree" from the assault here that Johnson's experience was unforeseeable to Starbucks and its executives responsible for customer safety within the store.  *Gray*, 535 F. App'x at 16; *see also Maheshwari*, 2 N.Y.3d at 294–95 (contrasting past incidents of disorderly conduct, misdemeanor assault, and criminal mischief from "brutal attack" at issue, and holding the latter not foreseeable).

Finally, Johnson has adduced evidence that at least some employees felt unsafe, Flores Dep. at 81–82, perceived the need for additional security measures, *see* Kirimca Dep. at 23–25, 74–75; Flores Dep. at 58–59, 74–75, and requested such repeatedly, *id.* at 25 (Kirimca discussed need for more security measures with other employees "multiple times" and with "multiple" employees).  Provided that evidence of such real-time requests bespoke concerns about physical safety,[14] Johnson can also fairly cite these as evidence of the foreseeability of physical confrontations.  *See, e.g.*, *Jenkins v. Ehmer*, 272 A.D.2d 976, 977 (4th Dep't 2000) (denying summary judgment motion where, *inter alia*, police, guests, neighbors, and motel manager all

---

[14] Purely verbal confrontations are, however, sufficiently dissimilar from the incident at hand to not support Johnson on this point.  *See Maheshwari*, 2 N.Y.3d at 294 (past incidents of disorderly conduct, misdemeanor assault, resisting arrest, and possession of stolen property not sufficiently similar to physical assault on plaintiff to raise triable issue as to foreseeability).  Insofar as Kirimca testified that he was threatened "hundreds of times" by customers, Kirimca Dep. at 51, the evidence presented on summary judgment does not make clear that the threats to which he referred were of force or violence.  Accordingly, in denying Starbucks's motion, the Court does not rely on this testimony.

requested need for additional security guards, but motel refused to hire more).  And Bussard attested that Starbucks required its employees to complete "workplace violence trainings." *Compare* Bussard Dep. at 37, *with Grogan v. Simon Prop. Grp., Inc.*, 192 A.D.3d 769, 772 (2d Dep't 2021) (triable issue as to whether it was foreseeable that disturbance in a mall could cause a dangerous panic—such as the one in which plaintiff was injured—where mall had trained employees to handle mass evacuations and active shooter scenarios).

For the above reasons, Starbucks has not demonstrated an absence of evidence that the June 28, 2019 incident was foreseeable.  Such is its burden on this motion.[15]  *See Celotex*, 477 U.S. at 325 ("[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."); *cf. Santora v. Costco Wholesale Corp.*, No. 17 Civ. 4415 (CS), 2018 WL 5886442, at *3 (S.D.N.Y. Nov. 8, 2018) (if the defendant, as the moving party, can point to the absence of evidence that it caused or had notice of the hazard, then it may "thereby shift the burden to the Plaintiff to create an issue for trial through specific factual assertions").  And Johnson has adduced proof, including prior acts of violence, on which a jury could find the attack on him foreseeable, giving rise to a duty on Starbucks's part to afford patrons greater protections.  *See Markov v. Grecian Gardens Co.*, 188 A.D.3d 1032, 1033 (2d Dep't 2020) (owner's duty reasonably to protect those using the premises from criminal activity may arise from proof of notice of prior such activity).

---

[15] Although Starbucks does not seize specifically on this point, the absence from the incident log of a record of a physical confrontation or fight predating the June 28, 2019 incident does not disturb the above analysis.  *See* Dkt. 49.  As reviewed, there is testimonial proof of physical confrontations in the Union Square Starbucks predating the assault on Johnson.  And as multiple witnesses testified, Starbucks employees did not consistently file incident reports, but instead did so only under limited circumstances.  *See, e.g.*, Kirimca Dep. at 44; Def. 56.1 Reply ¶ 109; Bussard Dep. 146–47; Anubis Dep. at 51–57; *cf.* Flores Dep. at 71–74.

The cases on which Starbucks relies—finding incidents not foreseeable and entering summary judgment for the defendant—are factually distinct. *See* Mem. at 6–7. The records in many were devoid of evidence of antecedent physical confrontations. *See, e.g.*, *id.* at 7 (citing *York v. Paddy's Loft Corp.*, 208 A.D.3d 617 (2d Dep't 2022) (unforeseeable where female patron jumped into lap of male patron, caused two patrons to fall off their ball stool and onto plaintiff, injuring him); *Ali v. Miller's Ale House, Inc.*, No. 15-610868, 2018 WL 11457324, at *1–3 (N.Y. Sup. Ct. Aug. 03, 2018) (unforeseeable where unidentified man approached plaintiff and asked "what he was looking at," then 30–45 minutes later, asked plaintiff if he "wanted to pay with pain" and began beating him), *aff'd* 189 A.D.3d 996 (2d Dep't 2020); *Velez v. Pacific Park 38 Sixth Ave., LLC*, No. 16-702898, 2019 WL 1428662, at *2 (N.Y. Sup. Ct. Feb. 05, 2019) (unforeseeable where there was "no evidence in the record . . . of any past history or occurrence of violent conduct," plaintiff had not seen any violent altercations, and was "sucker punched" from behind and without warning), *aff'd* 183 A.D. 3d 590 (2d Dep't 2020)); *see also Oblatore v. 67 W. Main St., LLC*, 169 A.D.3d 705 (2d Dep't 2019) (unforeseeable where plaintiff was attacked from behind in a parking lot); *Cort*, 2017 WL 6513673, at *4–5 (granting summary judgment where plaintiff only adduced evidence of minor property crimes, but no evidence of past physical assaults). *Forgione v. The Quiet Man Pub, Ltd.*, No. 16-711567, 2019 WL 6497025 (N.Y. Sup. Ct. Oct. 31, 2019), is similarly inapposite, as the stabbing at issue was singular, arising from a personal relationship between the assailant and victim. *See id.* at *1 (testimony and pub security footage established that plaintiff and assailant knew each other, had relationship in which plaintiff purchased marijuana from assailant, and sudden altercation arose after assailant questioned plaintiff about owing him money), *aff'd*, 206 A.D.3d 624 (2d Dep't 2022).

The New York Court of Appeals's decisions in *Maheshwari v. City of New York*, 2 N.Y.3d 288 (2004) and *Pink v. Rome Youth Hockey Ass'n*, 28 N.Y.3d 994 (2016), are also readily distinguished. Each involved a plaintiff who was injured in a physical confrontation that arose at a spectator event involving a large crowd.[16] *See Maheshwari*, 2 N.Y.3d at 292–93 (plaintiff attacked in public park at rock concert); *Pink*, 28 N.Y.3d at 996–97 (plaintiff attacked at hockey game in rented arena, after spectators began fighting and plaintiff interceded to "break up the fight"). In each, the Court of Appeals noted the absence of prior similar physical confrontations at earlier events. *See Maheshwari*, 2 N.Y.3d at 294 (past crimes at Lollapalooza concerts were "of a lesser degree than a criminal assault," such as disorderly conduct, misdemeanor assault, theft, and "criminal mischief"); *Pink*, 28 N.Y.3d at 997 (no history of violence or physical confrontation; crux of plaintiff's claim was "tensions between the spectators essentially put defendant on notice of the need to enforce [its] policy" that required on-ice officials to try to remove spectators from games for use of obscene language or threatening physical violence). In this case, in contrast, Johnson has mustered proof of sufficiently similar physical confrontations in the Union Square store, involving in-store physical violence perpetrated by persons whose entry was, a reasonable juror could find, enabled by the store's open-door policy and/or insufficient security measures. More on point is *Gray*, in which the Second Circuit sustained a claim of foreseeability. *See* 535 F. App'x at 16 ("Rather, it is a case

---

[16] The nature of these vast venues is also a far cry from the smaller space that the Union Square store comprised. *Compare* Johnson Dep. at 28–29 (restroom and seating area "a few feet" apart), *with Maheshwari*, 2 N.Y.3d at 295 (assault happened at multi-thousand-person concert in public park). The size of the venue has potential to bear on what security measures might reasonably be found warranted to address foreseeable dangers. See *Maheshwari*, 2 N.Y.3d at 295 ("[I]t is difficult to understand what measures could have been undertaken to prevent plaintiff's injury except presumably to have had a security officer posted at the precise location where the incident took place or wherever pedestrians were gathered, surely an unreasonable burden." (internal alterations and quotation marks omitted)).

24

in which Denny's knew that bar rush customers were frequently loud and profane, viewed such conduct as work place violence, and knew that on at least five reported occasions, bar rush customers had become so disruptive that police were dispatched to the restaurant.").

For the above reasons, the Court denies Starbucks's motion for summary judgment.[17]

## CONCLUSION

---

[17] Save a sentence in Starbucks's reply, the parties do not address the negligence elements of breach or proximate cause. *See* Reply at 6 (disputing proximate cause). With Starbucks not having sought summary judgment on these points, the Court does not—and has not been given the tools to—definitely evaluate the sufficiency of Johnson's evidence on these points. In any event, where a harm's foreseeability has been shown, the issue of breach is generally left for the jury. *See Nallan v. Helmsley-Spear, Inc.*, 50 N.Y.2d 507, 520 n.8 (1980) ("What safety precautions may reasonably be required of a landowner is almost always a question of fact for the jury."). And as to proximate cause, Starbucks's sole point in its reply is that Johnson has not adduced evidence that the open-door bathroom policy specifically was the proximate cause of the attack on him. Johnson's negligence claim, however, does not solely take issue with that policy: He argues more broadly that Starbucks failed to take reasonable security measures to guard against physical attacks on patrons and that such proximately caused the attack on him. *See Boderick v. RY Mgmt. Co.*, 71 A.D.3d 144, 147 (1st Dep't 2009) (negligence must be "substantial cause of the events which produced the injury" to show proximate cause). Even based on the limited evidence presented as to foreseeability—including past physical confrontations, the store's location below a methadone clinic, and concerns that employees had expressed about physical security—Johnson appears to have adduced sufficient evidence to enable a reasonable jury to find that the lack of additional security measures in the Union Square store, such as the presence of a security guard, proximately caused the June 28, 2019 incident. *See also* Bussard Dep. at 87 (other security measures included improving lighting or changing restroom lock's code more frequently). Starbucks has not suggested that an intervening, unforeseeable act broke the possible causal connection between this asserted negligence and Johnson's injury. *See Maheshwari*, 2 N.Y.3d at 295; *Brown v. Roblee*, 57 A.D.3d 1494, 1494–95 (4th Dep't 2008).

A jury, of course, could find for Starbucks on this element, as on the others. The Court's denial of summary judgment merely reflects that the factual record developed here provides sufficient evidence on which a jury could find for the plaintiff. Nothing in this decision should be read to imply categorical duties on the part of public establishments beyond those reflected in the existing case law. *See, e.g.*, *Gray*, 535 F. App'x at 17 ("We do not suggest that, as a matter of law, restaurant staff have a duty to take action whenever one patron complains that another is behaving rudely or boisterously, and that the failure to take action to quiet or expel diners that others find loud or offensive breaches the duty to provide a safe environment for guests.").

For the foregoing reasons, the Court denies Starbucks's motion for summary judgment. The Clerk of Court is respectfully directed to terminate the motion at docket 60.

This case will proceed to trial. The Court directs the parties promptly to confer and, by October 2, 2023, to submit a joint pretrial order consistent with the Court's Individual Rules governing jury trials. Any motions *in limine* are due on the same date as the joint pretrial order; opposition briefs are due one week later.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: September 1, 2023
      New York, New York

26